# Eastburn v. Grove, Appellant.

*Corporations—Stock subscription—Return of money — Promoters.*

When the promoters of a project to incorporate a bank, induce persons to sign a stock subscription agreement by which it is provided that each share "shall be issued at $55, of which par value is $50 and $5 a subscribed premium, is for undivided profits, parts of which you may use for an organization fund to purchase books, checks and supplies and pay legal and other expenses incident to organization," the promoters may use only the $5 for organization expenses, and if the project of incorporation fails, and it is found that they have trenched upon the $50 subscribed for capital, they will be personally liable to the subscribers for the loss.

Argued Oct. 3, 1917. Appeal, No. 112, Oct. T., 1917, by defendant, from order of C. P. No. 4, Philadelphia Co., Sept. T., 1916, No. 237, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Walter R. Eastburn v. Daniel F. Grove and Budd W. Rulon. Before ORLADY, P. J., HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Assumpsit to recover back money paid under a stock subscription.

At the trial it appeared that the plaintiff signed a stock subscription agreement incident to the organization of a proposed bank to be known as the "Valley Forge Bank." The terms of the agreement are quoted in the opinion of the Superior Court. Plaintiff paid $675 on account of his subscription. The proposed incorporation failed, and plaintiff did not receive his stock. The defense was that the whole sum paid in by plaintiff and others had been consumed in expenses.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*Israel K. Levy,* for appellants.—One of a number of subscribers to the stock of a proposed corporation cannot maintain an action of assumpsit against an organizing board to recover money paid to it under similar subscription agreements, in which an organization fund is created to make certain expenditures, when all the money has been expended by the board before any demand for its return: Hudson v. West, 189 Pa. 491; Lieb v. Painter, 42 Pa. Superior Ct. 399; Mocomber v. Proctor, 22 Pa. Superior Ct. 483; Burton v. Trainer, 27 Pa. Superior Ct. 626; Horine v. Mengel, 30 Pa. Superior Ct. 67.

*Robert E. Lamberton,* for appellee.—Plaintiff is entitled to recover: Hudson v. West, 189 Pa. 491; Lieb v. Painter, 42 Pa. Superior Ct. 399.

OPINION BY TREXLER, J., December 13, 1917:

The agreement we are asked to construe reads in part as follows: "To the Organization Board for the Proposed Banking Institution: I subscribe for fifteen shares of the capital stock in a financial institution to be organized by you according to law and agree to pay for same by monthly payments as called for by your organization board or the directors......Each share sold shall be is-

Opinion of the Court.

sued at $55, of which par value is $50, and $5 a subscribed premium, is for undivided profits, parts of which you may use for an organization fund to purchase books, checks and supplies and pay legal and other expenses incident to organization and for securing the bank's capital, and you are hereby authorized and empowered to use this subscription for the purchase of such charter as may be desired by the organization board, a quorum of which is authorized to act as my attorney in fact in all affairs relating to securing subscriptions, organization and the apportionment of shares." There was a note following the agreement that stated, "Please pay $5 a share when subscribing, making check payable," etc. The efforts to form the corporation came to naught. The consideration upon which the plaintiff parted with his money failed. Unless something to the contrary appeared in the contract of subscription, he was therefore entitled to receive back from the organizers the money paid by him. As was said in Hudson v. West, 189 Pa. 491, "They received the plaintiff's money in consideration that they would form a company and give him stock therein......and they did nothing of the kind. They certainly cannot keep the plaintiff's money in those circumstances. Their want of success in the formation of the company is no concern of the plaintiff, and it is no defense in this action." See Lieb v. Painter, 42 Pa. Superior Ct. 399; Cook on Corporations, 6th Ed., Page 563; 10 Cyc. 265.

If the agreement allows the sum subscribed or an indefinite part thereof to be used for the purposes of organizing the company, the subscriber cannot recover back in an action at law any part of the amount subscribed, but his remedy is a bill in equity for an accounting, but we are led to the conclusion that only the $5 referred to therein as "a subscribed premium" was available for the expenses of organization. Evidently the par value of the shares was to remain intact, and only the five dollars treated as undivided profits was to

be used for expenses.  The words "parts of which" refer to the nearer antecedent substantive, i. e., "the subscribed premium" of five dollars.  The use of the plural "parts" has no significance as five dollars standing alone can be divided into parts as readily as the sums five dollars and fifty dollars considered together.  The intention was that parts of the five dollars might be used from time to time as occasion demanded..  The five dollars was a separate fund, and the promoters in their expenditures were limited to it.  We find nothing in the agreement which authorized the promoters of the enterprise to exhaust, or even to consume in part, the amount specifically subscribed for capital stock.  In the absence of an agreement to the contrary the promoters must bear the loss consequent to the collapse of the enterprise.

The assignments of error are overruled and the judgment is affirmed.